Dwayne Morris **BIHMS**, Plaintiff,

v.

Johnny **KLEVENHAGEN**, et al., Defendants.

Civil Action No. H–94–2190.

United States District Court, S.D. Texas, Houston Division.

June 11, 1996.

Plaintiff, pro se.

Nick Turner, Assistant Harris County Attorney, Houston, Texas, for Defendant.

OPINION ON JUDGMENT AS MATTER OF LAW

HUGHES, District Judge.

1. *Introduction.*

An inmate was held in the Harris County jail awaiting transfer to the Texas state prison. The inmate entered the jail with a medical condition that required continuous treatment. Harris County deducted an inmate's

medical costs from his commissary account. The inmate objects to paying for his medical care while in the custody of the state.

## 2. *Background.*

Dwayne Morris Bihms was held in the Harris County jail as a convicted felon until he could be moved to a prison in Huntsville. Bihms required dialysis and medicine. The jail furnished Bihms with medical care; then it deducted the costs from his commissary account. The county deducted a total of $594.

## 3. *Suspects & Fundamentals.*

■ Even if inmates do not fit into the traditional analysis of "suspect class" and "fundamental right," they have no political power, including precious few friends on the outside, and they have rights to governmental regularity and humane treatment. *See Delverne v. Klevenhagen,* 888 F.Supp. 64 (S.D.Tex.1995) (citing *Hilliard v. Ferguson,* 30 F.3d 649, 652 (5th Cir.1994)). An independent judiciary ought to examine carefully the impositions on a group as helpless and vilified as convicts. On the other hand, because the class is created through careful societal processes and its distinctive treatment serves obvious legitimate purposes, an examination of impositions will ordinarily discover at least a constitutionally-acceptable minimum level of rationality supporting the program.

## 4. *Inmate Health.*

■ Mere humanity as constitutionally established requires that the state furnish health care to inmates. Even those who can pay are not free to seek private care; all of them must be maintained as human beings. Prisoners' dependence is a costly byproduct of their necessary isolation.

■ If the inmate can pay for his medical care, then the state may require reimbursement. Texas has a law that adopts that policy. TEX.CODE CRIM.PRO.ANN. art. 104.002(d) (Supp.1996). No right described or adumbrated in the Constitution is implicated by a decision of the state to seek compensation for its actual, reasonable costs

in maintaining the prisoner. *Cf. City of Revere v. Massachusetts General Hospital,* 463 U.S. 239, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983) (allowing states to decide who should pay for the medical care of inmates), *Gross v. Bowen,* No. 82–3683H, 1988 WL 252067 (S.D.Tex. Feb. 22, 1988) (denying the receipt of disability benefits to prisoners).

■ If the prisoner cannot pay, he must be maintained at state expense; it cannot deny minimal medical care to poor inmates. *See Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The prisoner makes no claim that he was denied care. Rather, he simply objects to being deprived of his liberty without the reverse "benefit" of cost-free maintenance from the state. As he was obliged to pay court costs, he may be obliged to pay his medical costs. Texas imprisoned him; it did not adopt him.

## 5. *Due Process, Deduction.*

■ In seeking reimbursement, the state may deduct the cost from the inmate's commissary account. Although the inmate may not know the amount of his bill at the jail's medical unit, he will certainly know that he got medical care; he will know to look for a deduction in the sixty days or so after treatment. The jail will tell him his balance and all transactions when he asks. No notice before deduction is required. This prisoner does not complain that he was not allowed to dispute a charge he thought was wrong.

## 6. *Due Process, Indigence.*

■ Bihms objects that he should not have to pay since he is indigent. If a governmental service is conditioned on payment of a fee, the government must have a process to ascertain applicants who are too poor to pay the fee. If the government furnishes the service without requiring the cost in advance, no separate determination of indigence is needed. Indigence will become apparent when the government attempts to collect the medical charges. An indigent under this arrangement will simply be a person who was furnished the service but who cannot then in fact pay. No advance declaration of indigence is useful or necessary.

The jail can keep posting medical charges to the prisoner's account so that it has a negative balance. The only possible question is: When he has money put into the account, what happens to it? The inmate's income may be applied to his debts to the government, including medical charges, court costs, fine, and restitution.

### 7. *Commissary Balance & Humanity.*

■ As a matter of humanity the jail should allow the prisoner a modest balance to buy the simple personal commodities like toiletries available at the commissary. Friends and relatives who would like to ameliorate the prisoner's life in a little way are not allowed to give him actual commodities for security reasons. All personal belongings must come through a prison-approved process. Inmates rely on the outsiders to deposit to their accounts so they may buy at the commissary. If all the money deposited into an inmate's account is immediately seized for his medical expenses, he has no possibility of amenities. While this may be his deserved condition as a felon, it benefits the government submarginally and frustrates the generous impulses of those in the free community who seek to help modestly.

Both justice and efficiency suggest that inmates should be able to have small amounts of money, like $15 a month, deposited to their accounts without its being applied to debts to the government.

### 8. *Double Billing.*

■ The prisoner has suggested that the county is collecting from him and from the state. He has no factual support for suggesting that the charges and credits between Texas and Harris County were not being made as they both knowledgeably agreed. Until he has been required to pay twice, even indirectly through his being classified differently by the prison because of his debts, he has no standing to sue—although he may complain under his right to free expression.

### 9. *Conclusion.*

Bihms is responsible for his medical expenses while incarcerated. He will be obliged to repay the government when he can.