959 F.Supp. 1224 (1997)
Ronald W. GARDNER, Plaintiff,
v.
Pete WILSON, James Gomez, Dan Lundgren, Ernie Roe, Defendants.
No. CV 96-1137-JGD(RC).
United States District Court, C.D. California.
March 3, 1997.
*1225 *1226 Ronald Wayne Gardner, Norco, CA, pro se.
Quisteen S. Shum, California Office of the Attorney General, San Diego, CA, for Defendants.

ORDER ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
DAVIES, District Judge.
Pursuant to 28 U.S.C. Section 636, the Court has reviewed the Complaint and other papers along with the attached Report and Recommendation of United States Magistrate Judge Rosalyn M. Chapman, and has made a de novo determination.
IT IS ORDERED that (1) the Report and Recommendation is approved and adopted; and (2) defendants' motion to dismiss is granted; and (3) Judgment shall be entered dismissing with prejudice the Complaint and action.
IT IS FURTHER ORDERED that the Clerk shall serve copies of this Order, the Magistrate Judge's Report and Recommendation and Judgment by the United States mail on the parties.

REPORT AND RECOMMENDATION ON A UNITED STATES MAGISTRATE JUDGE
CHAPMAN, United States Magistrate Judge.
This Report and Recommendation is submitted to the Honorable John G. Davies, District Judge, pursuant to the provisions of 28 U.S.C. § 636 and General Order 194 of the United States District Court for the Central District of California.

BACKGROUND

I
On February 15, 1996, plaintiff Ronald W. Gardner, a state prisoner proceeding pro se and in forma pauperis, filed a civil rights complaint under 42 U.S.C. § 1983 against state officials Pete Wilson, Governor of the State of California; Dan Lungren, Attorney General of the State of California; James Gomez, Director of the California Department of Corrections; and E. Roe, Warden of the California State PrisonLos Angeles County, in Lancaster, California. The gravamen of the plaintiff's complaint is that his constitutional rights under the Eighth Amendment and the Fourteenth Amendment's equal protection and due process clauses, as well as the constitutional prohibition against ex post facto laws and bills of attainder, were violated when prison officials charged him $5.00 for medical services on October 25, 1995. (Complaint, at 4; Attachment, at 1). The plaintiff further alleges that there has not been a rebate to taxpayers or a cut in the California Department of Corrections' budget to reflect any savings to the taxpayer resulting from this policy.[1] The plaintiff requests return of his fees and $1 million in damages for "stress, anxiety, suffered mentally & emotionally, and in some ways, physically as well." (Complaint, at 8).

*1227 II
The defendants filed a motion to dismiss on July 9, 1996. The plaintiff filed an opposition to the motion to dismiss on August 9, 1996.[2] The defendants filed a reply to that opposition on August 26, 1996.

DISCUSSION

III
A motion to dismiss should be granted when it is clear that plaintiff can prove no set of facts in support of the claim that would entitle him to relief. Neitzke v. Williams, 490 U.S. 319, 326-27, 109 S.Ct. 1827, 1832-33, 104 L.Ed.2d 338 (1989); Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984) Everest & Jennings v. American Motorists Ins. Co., 23 F.3d 226, 228 (9th Cir.1994). In considering the motion to dismiss, the Court must accept the allegations of the complaint as true. Hishon, 467 U.S. at 73, 104 S.Ct. at 2232; Hospital Bldg. Co. v. Trustees of Rex Hosp., 425 U.S. 738, 740, 96 S.Ct. 1848, 1850, 48 L.Ed.2d 338 (1976).
The court must also construe the pleading in the light most favorable to the party opposing the motion and resolve all doubts in the pleader's favor. Jenkins v. McKeithen, 395 U.S. 411, 421, 89 S.Ct. 1843, 1848, 23 L.Ed.2d 404 (1969). Moreover, pro se pleadings are held to a less stringent standard than those drafted by a lawyer. Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972) (per curiam); Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 623 (9th Cir.1988).

IV
The threshold inquiry in any Section 1983 action is whether the conduct complained of was committed by a person acting under color of state law, depriving the plaintiff of a constitutionally protected right. City of Oklahoma City v. Tuttle, 471 U.S. 808, 815, 105 S.Ct. 2427, 2432, 85 L.Ed.2d 791 (1985); Parratt v. Taylor, 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981); Smith v. City of Fontana, 818 F.2d 1411, 1415 n. 5 (9th Cir.1987). The plaintiff alleges that his rights under the Eighth and Fourteenth Amendments, as well as the provisions against ex post facto laws or bills of attainder, were violated when he was charged a nominal medical co-payment.
Under California Penal Code § 5007.5, the California Department of Corrections ("CDC") is authorized to charge state prison inmates a $5.00 fee "for each inmate-initiated medical visit...." Cal.Penal Code ("P.C.") § 5007.5(a).[3] However, no inmate "shall [] be denied medical care because of a lack of funds in his ... prison account." P.C. § 5007.5(c). Further, an inmate will not be charged the fee if the inmate has no money in his personal account, is in a life-threatening or emergency situation, or for follow up visits at the direction of the medical staff. P.C. § 5007.5(b), (d), & (e); See also Cal. Code Regs. tit. 15, § 3354.2 (1995) (the charge shall "[c]over the evaluation, assessment, and medically necessary treatment, including follow-up services that relate to the initial condition and which are determined by health care staff to be necessary").

A. Eighth Amendment:

Conditions of confinement in a prison are subject to scrutiny under Eighth Amendment standards. Hutto v. Finney, 437 U.S. 678, 685, 98 S.Ct. 2565, 2571, 57 L.Ed.2d 522 (1978); Hoptowit v. Spellman, 753 F.2d 779, 784 (9th Cir.1985). The "unnecessary and wanton infliction of pain" constitutes cruel and unusual punishment forbidden by the Eighth Amendment. Whitley v. Albers, 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986) (quoting Gregg v. Georgia, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976)).
Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment. Carlson v. Green, 446 *1228 U.S. 14, 19, 100 S.Ct. 1468, 1472, 64 L.Ed.2d 15 (1980); Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). Deliberate indifference in violation of the Eighth Amendment's proscription against cruel and unusual punishment exists when a prison official knows that an inmate faces a substantial risk of serious harm to an inmate's health and fails to take reasonable measures to abate the risk. Farmer v. Brennan, 511 U.S. 825, 826-29, 114 S.Ct. 1970, 1974, 128 L.Ed.2d 811 (1994); Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir.1995). To prove deliberate indifference, the plaintiff must show that the defendant knew of the risk of serious harm and disregarded the risk by failing to take reasonable measures to abate it. Farmer, 511 U.S. at 846-48, 114 S.Ct. at 1984.
Deliberate indifference to an inmate's serious medical needs may be manifested in two ways: either when prison officials deny, delay or intentionally interfere with medical treatment, or by the way that prison physicians provide medical care. McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir.1992); Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir.1988). In either case, however, the indifference to the inmate's medical needs must be substantial; inadequate treatment due to negligence, inadvertence, or differences in judgment between an inmate and medical personnel does not rise to the level of a constitutional violation. Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir.1981).
Here, plaintiff does not allege that defendants failed to provide medical care to him, or delayed his receipt of medical care, but rather that he was required to pay for medical care while imprisoned. In effect, plaintiff claims that, although he had funds to pay a nominal $5.00 co-payment, he has a constitutional right to free medical treatment while imprisoned. There is no merit to plaintiff's claim. As the Ninth Circuit has found, an inmate does not state a claim under the Eighth Amendment when he cannot allege that he was denied medical treatment because he was unable to pay a nominal co-payment or fee. Shapley v. Nevada Board of State Prison Commissioners, 766 F.2d 404, 408 (9th Cir.1985); see also Reynolds v. Wagner, 936 F.Supp. 1216, 1223 (E.D.Pa. 1996) ("although the government must provide medical care, the Supreme Court has never held the government must pay for it"); Bihms v. Klevenhagen, 928 F.Supp. 717, 718 (S.D.Tex.1996) ("If the inmate can pay for his medical care, then the state may require reimbursement."); Johnson v. Department of Pub. Safety & Corr. Serv., 885 F.Supp. 817, 820 (D.Md.1995) ("because the policy mandates that no one shall be refused treatment for an inability to pay, the co-payment will not result in a denial of care"); Martin v. Debruyn, 880 F.Supp. 610, 614 (N.D.Ind. 1995) ("Nothing in the Eighth Amendment ... requires a state to provide an inmate, free of charge, with a necessary commodity that would not be free outside the prison walls and which the inmate has the legal means to obtain."); cf. Revere v. Massachusetts General Hospital, 463 U.S. 239, 245 n. 7, 103 S.Ct. 2979, 2984 n. 7, 77 L.Ed.2d 605 (1983) ("Nothing we say here affects any right a hospital or governmental entity may have to recover from a detainee the cost of the medical services provided to him."). The plaintiff, thus, has not stated a claim for relief under the Eighth Amendment.

B. Fourteenth Amendment:

1. Equal Protection Clause:

The equal protection clause of the Fourteenth Amendment "commands that no State shall `deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985). Thus, to state a cognizable equal protection claim, plaintiff must allege facts demonstrating that he "receiv[ed] different treatment from that received by others similarly situated." Van Pool v. City and County of San Francisco, 752 F.Supp. 915, 927 (N.D.Cal.1990), aff'd 966 F.2d 503 (9th Cir.1992) (citations omitted). In other words, a plaintiff must show proof of discriminatory motive or intent. See Navarro v. Block, 72 F.3d 712, 716 (9th Cir.1996) (classification based on domestic violence/non-domestic *1229 violence 911 calls violates equal protection under rational basis test).
Where the statute or policy does not employ a classification which is inherently invidious (based on race or gender), or impinges on fundamental rights, courts review the statute or policy to see if it "`classif[ies] the persons it affects in a manner rationally related to legitimate governmental objectives.'" Id., at 717 (quoting Schweiker v. Wilson, 450 U.S. 221, 230, 101 S.Ct. 1074, 1080, 67 L.Ed.2d 186 (1981)). However, conduct by a public official which is malicious, irrational or arbitrary, is not rationally related to a legitimate state interest. Armendariz v. Penman, 75 F.3d 1311, 1326 (9th Cir. 1996) (citations omitted).
To consider plaintiff's equal protection claim, we must first determine what level of scrutiny to apply to P.C. § 5007.5, by determining whether plaintiff is a member of a "suspect class," and if not, whether a "fundamental interest" is involved. The Supreme Court has never held that poverty alone identifies a "suspect class" for purposes of equal protection analysis. Maher v. Roe, 432 U.S. 464, 471, 97 S.Ct. 2376, 2380, 53 L.Ed.2d 484 (1977); San Antonio Indep. Sch. Dist. v. Rodriguez, 411 U.S. 1, 24, 93 S.Ct. 1278, 1291, 36 L.Ed.2d 16 (1973). The plaintiff, thus, is not a member of a "suspect class." Further, there is no "fundamental interest" in inmate-initiated non-emergency or non-life-threatening medical visits. Johnson, 885 F.Supp. at 821.
Because no suspect class is involved and there is no fundamental interest at stake, the allegedly discriminatory policy need only bear a "rational relationship" to legitimate state purposes. Pennell v. City of San Jose, 485 U.S. 1, 14, 108 S.Ct. 849, 859, 99 L.Ed.2d 1 (1988); San Antonio, 411 U.S. at 40, 93 S.Ct. at 1300. The legitimate state purpose, here, is to assure inmates do not abuse their access to scarce medical services. See Reynolds, 936 F.Supp. at 1227 (co-payment requirement is to "instill reasonable decision making powers in the inmates"); Johnson, 885 F.Supp. at 820 (co-payment requirement is "to promote inmate responsibility and the efficient use of scarce medical resources"). The plaintiff, thus, has not stated a claim for relief under the equal protection clause of the Fourteenth Amendment.

2. Procedural Due Process:

The plaintiff also claims that taking funds from his inmate account for medical services violates his due process rights. Funds in an inmate's account are a protected property interest. Quick v. Jones, 754 F.2d 1521, 1523 (9th Cir.1985); Campbell v. Miller, 787 F.2d 217, 222 (7th Cir.), cert. denied, 479 U.S. 1019, 107 S.Ct. 673, 93 L.Ed.2d 724 (1986). Accordingly, we must decide what process is due, as "due process is flexible and calls for such procedural protection as the particular situation demands." Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972).
The process due is minimal. The plaintiff had notice of the law which authorized the CDC to charge him, and he initiated the medical visit. (Complaint, Attachment, at 1). Further, there is available a grievance system at the prison, which can be utilized to challenge any erroneous charges against plaintiff's inmate account. Cal.Code. Regs. tit. 15, § 3084.1 (1995). Due Process requires no more than notice and the post-deprivation grievance process. Myers v. Klevenhagen, 97 F.3d 91, 95-96 (5th Cir. 1996) (notice and adequate post-deprivation remedy); Reynolds, 936 F.Supp. at 1227 (same); Scott v. Angelone, 771 F.Supp. 1064, 1067 (D.Nev.1991) (no due process violation where money for medical charges deducted from inmate's account). Here, plaintiff has not set forth a claim for relief under the due process clause of the Fourteenth Amendment.

C. Ex Post Facto Law or Bill of Attainder:

Article I of the United States Constitution provides that neither Congress nor any state shall pass an ex post facto law. Art. I, § 9, cl. 3; Art. I, § 10, cl. 1. "Although the Latin phrase `ex post facto' literally encompasses any law passed `after the fact,' it has been recognized ... that the constitutional prohibition on ex post facto laws applies only to penal statutes which disadvantage the offender *1230 affected by them." Collins v. Youngblood, 497 U.S. 37, 41, 110 S.Ct. 2715, 2718, 111 L.Ed.2d 30 (1990); see also Rise v. Oregon, 59 F.3d 1556, 1562 (9th Cir.1995) (A law which implicates the ex post facto clause of the Constitution is one which "criminalizes conduct that was not a crime when it was committed, increases the punishment for a crime beyond what it was at the time the act was committed, or deprives a person of a defense available at the time the act was committed.") cert. denied, ___ U.S. ___, 116 S.Ct. 1554, 134 L.Ed.2d 656 (1996).
Generally, an ex post facto law "punishes as a crime an act previously committed, which was innocent when done, which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed...." Collins, 497 U.S. at 42, 110 S.Ct. at 2719 (quoting Beazell v. Ohio, 269 U.S. 167, 169-70, 46 S.Ct. 68, 68-69, 70 L.Ed. 216 (1925)). In a recent opinion analyzing the ex post facto clause, the Supreme Court described it as "aimed at laws that `retroactively alter the definition of crimes or increase the punishment for criminal acts.'" California Dep't. of Corrections v. Morales, 514 U.S. 499, 504, 115 S.Ct. 1597, 1601, 131 L.Ed.2d 588 (1995) (holding that a statutory change to California law permitting the California Board of Prison Terms, after an initial parole hearing, to schedule subsequent parole hearings two or three years later, rather than annually, does not violate the ex post facto clause).
Applying these principles, it is clear that P.C. § 5007.5 is not an ex post facto law. Although P.C. § 5007.5 is a provision of the California Penal Code, it is not a criminal statute which disadvantages a criminal offender. The plaintiff's crime was neither redefined nor was the punishment for plaintiff's criminal acts increased. Additionally, P.C. § 5007.5 was not applied retroactively to events occurring before its passage; to the contrary, it was applied solely after its passage.
Bills of attainder are "legislative acts ... that apply either to named individuals or to easily ascertainable members of a group in such a way as to inflict punishment on them without a judicial trial." United States v. Lovett, 328 U.S. 303, 315, 66 S.Ct. 1073, 1079, 90 L.Ed. 1252 (1946). Section 5007.5 does not apply to "named individuals or to easily ascertainable members of a group." Rather, it applies to all inmates in non-emergency medical situations who voluntarily seek medical treatment and have funds to pay a nominal co-payment. Additionally, as discussed above, P.C. § 5007.5 cannot be considered to "inflict punishment" on any inmate to whom it is applied. The plaintiff, thus, has failed to state a claim for relief under these provisions of the Constitution.

D. Conspiracy:

The plaintiff also alleges that defendant E. Roe conspired to deprive him of his constitutional rights. See Complaint, at 3, ¶ 4. Although not specifically set forth as a claim under 42 U.S.C. § 1985(3), we will analyze it as such. Section 1985(3) provides:
If two or more persons in any State or Territory conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of the equal privileges and immunities under the laws ... if one or more persons engaged therein to do, or cause to be done, any act in furtherance of the object of such conspiracy ... the party so injured or deprived may have an action for the recovery of damages.
To avoid interpreting Section 1985(3) as a general federal tort law, the Supreme Court has emphasized that the plaintiff must prove, as an element of the cause of action, "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 268, 113 S.Ct. 753, 758, 122 L.Ed.2d 34 (1993) (quoting Griffin v. Breckenridge, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971)). The plaintiff has failed to allege the requisite racial or class-based animus, and further has failed to allege any facts in furtherance of the alleged conspiracy.

*1231 V
Because this Court has found that plaintiff has not, and cannot, state a cognizable claim for relief under the Eighth Amendment, the equal protection and due process clauses of the Fourteenth Amendment, the ex post facto and bill of attainder provisions, and 42 U.S.C. § 1985(3), it is unnecessary to discuss plaintiff's inability also to state a claim against defendants in their official capacities based on the Eleventh Amendment,[4] and against defendants in their individual capacities based on plaintiff's failure to allege each defendant's personal involvement in a constitutional deprivation.[5]

RECOMMENDATION
IT IS RECOMMENDED that the Court issue an Order: (1) approving and adopting this Report and Recommendation; (2) granting defendants' motion to dismiss; and (3) directing that Judgment be entered dismissing the Complaint and action with prejudice.
DATED: Jan. 31, 1997.
NOTES
[1] In California, taxpayers have standing to restrain the illegal expenditure of public funds. Cal.Civ.Proc.Code § 526a; see also Farley v. Cory, 78 Cal.App.3d 583, 144 Cal.Rptr. 923 (1978) (state taxpayer has standing to maintain a suit for injunctive relief against state official). However, plaintiff has not alleged that he is a taxpayer and, further, has requested damages, which are not authorized by Cal.Civ.Proc.Code § 526a.
[2] Although denominated a "Memorandum of Points and Authorities in Support of Motion to Dismiss Complaint," it is apparent that this document is plaintiff's opposition to defendants' motion to dismiss.
[3] Added by Stats.1994, c. 145 (A.B.113) § 4, eff. July 11, 1994.
[4] The Eleventh Amendment bars suit against a state and its agencies and departments for monetary damages. Papasan v. Allain, 478 U.S. 265, 276-77, 106 S.Ct. 2932, 2939, 92 L.Ed.2d 209 (1986). Suits against state officials in their official capacities must be treated as suits against the state. Kentucky v. Graham, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985).
[5] When an inmate seeks damages from a prison official or a state official in his individual capacity, the inmate must demonstrate that that official, in acting or failing to act, caused the alleged constitutional deprivation. Leer v. Murphy, 844 F.2d 628, 633-34 (9th Cir.1988). Further, a supervisory official may be liable under Section 1983 only if he was personally involved in the constitutional deprivation, or if there was a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th Cir.1991), cert. denied, 502 U.S. 1074, 112 S.Ct. 972, 117 L.Ed.2d 137 (1992); Hansen v. Black, 885 F.2d 642, 645-46 (9th Cir. 1989).